Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2253 | **DATE** | 03/03/2003 |
| **CASE TITLE** | Central States vs. Denny | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/12/03 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted in part and denied in part. The Court grants Defendants' motion to dismiss with respect to Counts I and III. Count III is dismissed with prejudice, while Count I is dismissed without prejudice. The Court denies Defendants' motion to dismiss with respect to Count II. The Pension Fund has until March 10, 2003 to amend Count II to correct the statutory reference.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 0 4 2003 date docketed | 19 |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH✓ | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAR 0 4 2003

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND, )
a pension trust, and HOWARD McDOUGALL, )
trustee, )
        Plaintiffs, )
 )
 ) No. 02 C 2253
v. )
 )
CEDRIC DENNY, an individual, and )
JAMES DENNY, an individual, )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall (collectively, the "Pension Fund"), filed a lawsuit against Defendants Cedric Denny and James Denny for collection of withdrawal liability, interest and penalties incurred by an employer as a result of a withdrawal from a multi-employer pension plan arising under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001 et. seq. ("ERISA"). Defendants countered with a motion to dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). For the reasons stated herein, Defendants' motion is granted in part and denied in part.

### BACKGROUND

**I.   Legal Standards**

A Rule 12(b)(6) motion tests the sufficiency of a complaint; it is not designed to resolve the case on the merits. *Petri v. Gatlin*, 997 F. Supp. 956, 963 (N.D. Ill. 1997) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §1356, at 294 (2d ed. 1990)).

When determining whether to grant a 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). A court must also draw all reasonable inferences in the plaintiff's favor. *Id.* A complaint should be dismissed under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). But a plaintiff cannot satisfy federal pleading requirements merely by attaching bare legal conclusions to narrated facts which fail to outline the basis of their claims. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

## II. Factual Background

Until April 28, 1994, Cedric Denny and James Denny were the sole shareholders of Banner Transfer Company ("Banner"). (R. 1-1, Compl. ¶11.) Banner was subject to a collective bargaining agreement with Teamsters Local Union No. 89, under which Banner was required to make contributions to the Pension Fund. (*Id.* ¶12.)

On April 28, 1994, Defendants entered into a stock redemption plan with Banner. Under the agreement, Defendants sold their stock back to Banner in exchange for a $720,000 cash payment and a $100,000 promissory note. (R. 1-1, Compl. ¶23.) To finance this purchase, Banner secured a bank loan for $570,000. (*Id.* ¶24.) The transaction left Banner with a negative net worth and it was no longer able to pay its debts as they became due. (*Id.* ¶26.) Upon the redemption, Jack Sullender became the sole shareholder of Banner. (*Id.* ¶25.)

Almost two years later, on March 30, 1996, Banner permanently ceased having an obligation to contribute to the fund and completely withdrew from the fund as defined by 29 U.S.C. §1383. (R. 1-1, Compl. ¶13.) As a result of the complete withdrawal, Banner became

2

liable to the plan for $576,377.28. (*Id.* ¶14.) On June 3, 1996, Banner received notice and demand for payment of the withdrawal liability. (*Id.* ¶15.) The Pension Fund filed a lawsuit against Banner and received judgment in its favor on February 18, 1997. (*Id.* ¶¶19-20.) Defendants were not parties to the action. (*Id.* ¶21.) The Pension Fund was unable to collect any portion of the $576,377.28 award from Banner. (*Id.* ¶22.)

On March 20, 2002, the Pension Fund filed this Complaint, attempting to have Cedric Denny and James Denny held liable for Banner's withdrawal liability. In Count I, the Pension Fund claims the Defendants are liable for Banner's withdrawal liability under an alter ego theory.[1] In Count II, the Pension Fund seeks to recover Banner's withdrawal liability from Defendants for allegedly evading or avoiding it under 29 U.S.C. §1392(c). In Count III, the Pension Fund alleges Defendants are responsible for Banner's withdrawal liability as a result of fraudulent conveyances.

## ANALYSIS

Defendants attack the Complaint on several fronts. First, Defendants argue Count II should be dismissed because the Pension Fund is a multi-employer plan, while the claim is based on a statute that relates only to single employer plans. Second, Defendants contend that the Pension Fund has failed to state a claim in Count II for evading or avoiding withdrawal liability even under the multi-employer plan statute. Third, Defendants argue that Count II is barred by the statute of limitations. Fourth, Defendants claim that Counts I and III should be dismissed because ERISA preempts these common law causes of action. Fifth, Defendants maintain that

---

[1] The Pension Fund includes claims in Count I under the "Trust Fund Doctrine" and for "Improper Shareholder Distribution." The Pension Fund admitted at oral argument, however, that these causes of action are equal to its claim in Count III for fraudulent conveyance. Accordingly, the Court will not consider the trust fund and improper shareholder distribution claims separately from its analysis of fraudulent conveyance.

3

the Court should dismiss the Pension Fund's alter ego claim in Count I because it contains insufficient allegations.[2]

I.      **The Pension Fund Has Stated A Cause Of Action In Count II Under 29 U.S.C. §1392(c)**

   A.   **The Pension Fund's Error in Referencing the Wrong Statute is an Insufficient Basis for Dismissing Count II**

Defendants argue that Count II fails to state a claim upon which relief can be granted because the Complaint cites to and relies upon a statute, 29 U.S.C. § 1369(a),[3] that relates only to single employer pension plans, while the Pension Fund alleged in the Complaint that it is a multi-employer pension plan. Defendants argue that the Pension Fund therefore lacks standing to bring a cause of action under §1369(a). In response, the Pension Fund admits that its citation of §1369(a) is erroneous. It claims that it intended to cite 29 U.S.C. §1392(c)[4] which regulates the same conduct as §1369(a), but with respect to multi-employer plans.

---

[2] Defendants also have argued Counts I and III should be dismissed because they fail to confer subject matter jurisdiction over the action and the allegations therein are insufficient to maintain personal jurisdiction over the Defendants. This argument, however, is predicated on the Court dismissing Count II, which undoubtedly raises a federal question under ERISA and allows this Court to exercise personal jurisdiction over Defendants. Because the Court has found that the Pension Fund has stated a claim in Count II, Defendants' argument is moot.

[3] Section 1369(a) states, in relevant part:

> If a principal purpose of any person in entering into any transaction is to evade liability . . . then such person and the members of such person's controlled group (determined as of the termination date) shall be subject to liability under this subtitle in connection with such termination as if such person were a contributing sponsor of the terminated plan as of the termination date.

[4] Section 1392(c) reads, "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

The Pension Fund's error is not fatal. A complaint "need not set out all of the applicable law or facts provided it notifies the defendant of the claim's nature." *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000). Although the Pension Fund did cite to the wrong statute in one paragraph, it is clear elsewhere that it seeks relief for withdrawal liability arising out of ERISA's multi-employer pension plan. The subheading of Count II reads, "For withdrawal liability under MPPAA's Evade or Avoid Provision." (R. 1-1, Compl. at 6). MPPAA is an acronym for the Mulitiemployer Pension Plan Amendments Act of 1980. Defendants were therefore put on notice that the Pension Fund was seeking liability under §1392. While the Court will not dismiss the Complaint on this basis at this stage, the Pension Fund must file an amended complaint citing the correct statute.

### B. The Pension Fund has Stated a Claim for Evading or Avoiding Liability under Section 1392(c)

Defendants argue that the Pension Fund has failed to state a claim against them for evading or avoiding withdrawal liability under §1392(c) because Defendants were no longer shareholders at the time of the withdrawal or when payment for withdrawal liability became due. The Pension Fund counters that it is immaterial whether Defendants were shareholders when the withdrawal or the withdrawal liability became due, so long as a purpose of the stock redemption was to evade or avoid liability.

Under MPPAA, a transaction will be disregarded if "a principal purpose" of the transaction was to "evade or avoid liability." 29 U.S.C. §1392(c). In other words, liability will be determined as if the transaction to evade or avoid liability never occurred. *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Illinois Range*, 186 F.R.D. 498, 502 (N.D. Ill. 1999). In such cases, a plaintiff can reach those "assets that were transferred in order to 'evade

5

or avoid liability,' *as well as the parties to whom they were improperly transferred." Illinois Range,* 186 F.R.D. 498, 502 (emphasis in original).

Liability here can therefore extend to Defendants if a principal purpose of the stock redemption was to evade or avoid liability. Under these circumstances, liability would be determined as if Banner never repurchased the stock and Defendants would be responsible for Banner's withdrawal liability. *See Santa Fe Pacific Corp. v. Central States, Southeast & Southwest Areas Pension Fund,* 22 F.3d 725, 727-730 (7th Cir. 1994) (imposing withdrawal liability when transaction was structured as a stock sale in order to avoid ERISA liability); *Illinois Range,* 186 F.R.D. at 500 (disregarding stock sale that occurred two years before withdrawal liability arose).

The Complaint is sufficient to state a claim against Defendants for conducting the stock repurchase to "evade or avoid" withdrawal liability. The Complaint alleges that Defendants' shares of Banner were not valuable consideration for the transaction. (R. 1-1, Compl. ¶29.) Further, the Complaint claims that the transaction put Banner in a position where it was no longer able to pay its debts that came due.[5] (*Id.* ¶30.) Providing the Pension Fund with all reasonable inferences, the Complaint alleges that Defendants structured the stock transaction to avoid all future liabilities that Banner would encounter. The Court therefore finds that the Pension Fund has sufficiently alleged that Defendants' transaction was completed for a primary purpose of avoiding liability under §1392(c).

---

[5] The Pension Fund attached a document to its Complaint that shows the contributions for 1994 and 1995. (R. 1-1, Ex. H.) Defendants point to this exhibit as evidence that Banner was able to pay its debts after the stock transaction. The Pension Fund argued that this document simply showed the amount of money that Banner was obligated to contribute. Because there is a dispute concerning the meaning of the document, the Court will not rely upon this document to dismiss Count II.

6

## C. The Pension Fund's Section 1392(c) Action is not Barred by ERISA's Six-Year Statute of Limitations

Statute of limitations defenses are frequently inappropriate for resolution on a motion to dismiss because their application for the most part depends upon factual determinations. *Johnson Controls, Inc. v. Exide Corp.*, 129 F.Supp.2d 1137, 1142 (N.D. Ill. 2001). If a plaintiff alleges facts that show that his action is time-barred, however, he may plead himself out of court. *Id.* All reasonable inferences must be drawn in plaintiff's favor when a defendant seeks a dismissal because the claim is time-barred. *Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993).

Except in the case of fraud or concealment, an ERISA action for withdrawal liability "may not be brought after the later of: (1) six years after the date on which the cause of action arose, or (2) three years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action." 29 U.S.C. §1451(f). Here, the parties do not dispute the dates of the relevant events. Instead, at issue is what event triggered the statute of limitations. Defendants argue that the Pension Fund's ERISA action is time barred because the cause of action arose upon the stock redemption, which occurred nearly eight years before it filed the Complaint. The Pension Fund counters that the claim arose when the first payment for withdrawal liability became due on July 1, 1996, which is within the six year window.

The Supreme Court has explicitly stated when the statute of limitations begins running under the MPPAA:

> A limitations period ordinarily does not begin to run until the plaintiff has a "complete and present cause of action." *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S.Ct. 473, 474, 85 L.Ed. 605 (1941). A cause of action does not ripen under the MPPAA until the employer fails to make a payment on the schedule set by the fund.

7

> Applying the ordinarily applicable accrual rule, we hold that the
> statute of limitations does not begin to run on withdrawal liability
> until a scheduled payment is missed.

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 195, 118 S. Ct. 542, 546, 139 L. Ed. 2d 553 (1997). The Pension Fund is therefore correct that the statute of limitations began running only when Banner defaulted on its withdrawal liability payment on July 1, 1996. Because the Complaint was filed on March 20, 2002, the Pension Fund has filed suit within the six years allowed by the applicable statute of limitations. The Complaint for withdrawal liability under §1392 (c) is therefore timely.

## II. The Pension Fund Has Failed To State A Direct Cause Of Action Premised On Alter Ego Liability

Defendant argues that the Pension Fund's attempts to recover for Banner's withdrawal liability under the alter ego theory amount to state common law claims that are preempted by ERISA and should therefore be dismissed. The Pension Fund counters that the alter ego claim is federal in nature and is therefore not preempted.

Section 514(a) states that ERISA's provisions "shall supersede any and all State laws so far as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). The Seventh Circuit has identified three instances where the Supreme Court has allowed a claim to be so related to an employee benefit plan as to be preempted by ERISA: (1) where it mandates "employee benefit structures or their administration;" (2) where it "binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulating of an ERISA plan itself;" or (3) where it "provides an alternative enforcement mechanism to ERISA." *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 775 (7th Cir. 2002) (citing and quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). With

8

respect to the last instance of preemption, there are two categories of state laws that act as alternative enforcement mechanisms to ERISA:

> One is where "the existence of a pension plan [was] a critical element of a state-law cause of action," and the other is where a "state statute contains provisions that expressly refer to ERISA or ERISA plans . . . ." The former is preempted under ERISA's express preemption statute, i.e., § 1144(a), and the latter is preempted under ERISA's field ("complete") preemption statute, i.e., 29 U.S.C. § 1132(a)

*Biondi*, 303 F.3d at 776 (quoting *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, 815, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997)).

The issue of whether the Pension Fund's alter ego claim is preempted by ERISA essentially requires the Court to determine if it is a claim for direct liability or one for vicarious liability. The Seventh Circuit has held that a vicarious liability claim falls under state common law and is preempted by ERISA, while a direct liability claim under ERISA is a federal question. *Elite Erectors*, 212 F.3d at 1038. *See also Peacock v. Thomas*, 516 U.S. 349, 353, 116 S.Ct. 862, 866, 133 L.Ed.2d 817 (1996) (no federal question where plaintiff simply sought vicarious liability for an extant ERISA judgment against a third party). In *Elite Erectors*, the Seventh Circuit specifically found in the ERISA context that an action for piercing the corporate veil is a state law claim because it is based on vicarious liability, while an alter ego claim is a federal question because it is based on direct liability. 212 F.3d at 1038. Therefore, the Pension Fund's alter ego liability claim is federal in nature, but it must allege that Defendants are directly liable for Banner's ERISA violation.

Defendants claim that the Pension Fund has not sufficiently stated that they are directly liable for Banner's withdrawal. Defendants point out that the Pension Fund has failed to make any allegation that Defendants had control of Banner at the time of the ERISA violation at issue.

9

In fact, Defendants contend, the Complaint explicitly states that Defendants terminated their control of Banner in 1994 – two years before Banner withdrew from the Pension Fund. The Court agrees.

While *Elite Erectors* advises that a complaint does not need to set out all of the "applicable law or facts provided it notifies the defendant of the claim's nature," *id.*, the Pension Fund has failed to put Defendants on notice of any underlying ERISA violation while Defendants had control of the company. At oral argument, the Pension Fund contended that Defendants were responsible for Banner's withdrawal liability in 1996 because they were the true employers at that time. This theory, though, is fatally inconsistent with the Pension Fund's allegations. In the Complaint, the Pension Fund alleges that Defendants sold their entire interest in Banner in 1994 for $720,000 in cash, plus a $100,000 promissory note. The Pension Fund alleged in court that Defendants took this money and "never looked back."

The Pension Fund believes that its allegations are sufficient because it stated that Defendants forced Banner to agree to a promised future payment of $100,000. This cannot be the case. The Pension Fund does not allege that Defendants did anything to exert power or force Banner to act in a certain way after the stock transaction in 1994. The allegation of a mere debt in the form of a promissory note to be paid at some unspecified time is insufficient to allow this Court to reasonably infer that Defendants were employers in 1996. The Pension Fund has simply not alleged sufficient facts that would allow this Court to find that Defendants were the alter ego of Banner at the time the company withdrew from the Pension Fund in 1996. Accordingly, the Pension Fund's alter ego claim in Count I is dismissed without prejudice.

## III. The Pension Fund's Fraudulent Conveyance Claim is Dismissed

Defendants next argue that the Pension Fund's fraudulent conveyance claim in Count III is a state cause of action that is preempted by ERISA's provisions. The Pension Fund again maintains that its fraudulent conveyance action is based on federal common law. The Pension Fund alternatively argues that even if it were based on state common law, the fraudulent conveyance claim would not be preempted by ERISA.

The Court does not need to delve into an analysis as to whether a state common law claim for fraudulent conveyance would be preempted because a state claim would be barred by Illinois' statute of limitations. In Illinois, a claim for fraudulent conveyance must be brought "within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." 740 ILCS 160/10. Here, the transfer of shares occurred in 1994. The withdrawal liability was incurred in 1996. The judgment was entered in 1997. The cause of action was not brought until 2002. Clearly, Illinois' four-year statute of limitations bars a state common law claim for fraudulent conveyance.

In an ironic reversal of arguments, the Pension Fund claims that Illinois' statute of limitations with respect to fraudulent conveyance is preempted by ERISA's six-year term. The Pension Fund fails to explain how Illinois' statute either (1) mandates "employee benefit structures or their administration;" (2) "binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulating of an ERISA plan itself;" or (3) "provides an alternative enforcement mechanism to ERISA." *See Biondi*, 303 F.3d at 775. Clearly the first and second *Biondi* preemption circumstance does not exist here. As stated previously, *Biondi* only finds preemption in the third instance where "the

11

existence of a pension plan is a critical element of a state-law cause of action" or a "state statute contains provisions that expressly refer to ERISA or ERISA plans." *Id.* Illinois' statute of limitations has no relation to ERISA. It is therefore is not preempted. Accordingly, any state law claim for fraudulent conveyance is barred by the Illinois statute of limitations.

Therefore, the Court must determine whether there is a federal common law claim for fraudulent conveyance. Under certain circumstances, courts may develop "federal common law of rights and obligations under ERISA-regulated plans" where Congress has left a gap. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). Courts are advised to "cautiously develop a common law of ERISA" and create that common law remedy "only under limited circumstances." *Trustees of Will County Carpenters Health & Welfare Fund v. F.V.E. & Assocs., Inc.*, No. 00 C 7685, 2001 WL 1571453, at *2 (N.D. Ill. Dec. 4, 2001). The Court must ask whether the creation of the right is "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056 (3d Cir. 1989).

While the Seventh Circuit and other Courts of Appeals have supplemented ERISA with federal common law restitution claims in some contexts, *see FVE*, 2001 WL 1571453 at *2 (citing cases), neither the Court nor the parties have found one appellate court case that provides a federal common law claim under ERISA for fraudulent conveyance. The Pension Fund's Complaint and this opinion show why it is not necessary to fill ERISA's gaps by creating a federal right to recovery under fraudulent conveyance, because it has plenty of ammunition at its disposal under ERISA's evade or avoid statutory provision. Moreover, the relief that the Pension Fund seeks under the fraudulent conveyance theory – recovery of Banner's withdrawal liability – is already available with respect to its Section 1392(c) claim. *See Central States,*

12

*Southeast & Southwest Areas Pension Fund v. Johnson*, 991 F.2d 387, 392 n.6 (7th Cir. 1993). If Defendants engaged in a fraudulent transfer of Banner's assets to evade or avoid withdrawal liability, ERISA already provides a remedy. If the parties engaged in the same transaction without regard to the ERISA plan, there is no justification for creating a federal common law cause of action under ERISA. The Court finds that this is not a proper case to fill the gaps of ERISA by creating a federal common law cause of action for fraudulent conveyance. Accordingly, the Court dismisses Count III and the Pension Fund's analogous claim for improper shareholder distribution in Count I with prejudice.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. The Court dismisses with prejudice the Pension Fund's claims for fraudulent conveyance in Count III and improper shareholder distribution in Count I, because they are untimely under state law and not recognized gap-fillers under ERISA common law. The Court dismisses the Pension Fund's claim for alter ego liability in Count I without prejudice. Finally, the Court denies Defendants' motion to dismiss Count II.

DATED: March 3, 2003      ENTERED

AMY J. ST. EVE
United States District Court Judge